### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| MICHAEL WHITE, and | ) |
| ILLINOIS STATE RIFLE ASSOCIATION, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ILLINOIS STATE POLICE, BRENDAN F. | ) |
| KELLY, in his official capacity as Acting Director | ) |
| of the Illinois State Police, JESSICA TRAME, | ) |
| in her official capacity as Bureau Chief of the | ) |
| Illinois State Police Firearms Services Bureau, | ) |
| ILLINOIS CONCEALED CARRY LICENSING | ) |
| REVIEW BOARD, JEREMY MARGOLIS, as Chair | ) |
| of the Illinois Concealed Carry Licensing Review | ) |
| Board, EDWARD BOBRICK, STEPHEN | ) |
| DINWIDDIE, JOSEPH DUFFY, JON JOHNSON, | ) |
| JOSEPH VAUGHN and FRANK WRIGHT, | ) |
| | ) |
| Defendants. | ) |

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

COME NOW the Plaintiffs, MICHAEL WHITE, and ILLINOIS STATE

RIFLE ASSOCIATION, by and through KNABE, KRONING & BEDELL, and LAW

FIRM OF DAVID G. SIGALE, P.C., their attorneys, and for their Complaint for

declaratory and injunctive relief against the Defendants, ILLINOIS STATE

POLICE, BRENDAN F. KELLY, in his official capacity as Acting Director of the

Illinois State Police, JESSICA TRAME, in her official capacity as Bureau Chief of

the Illinois State Police Firearms Services Bureau, ILLINOIS CONCEALED

CARRY LICENSING REVIEW BOARD, JEREMY MARGOLIS, as Chair of the

Illinois Concealed Carry Licensing Review Board, EDWARD BOBRICK, STEPHEN

DINWIDDIE, JOSEPH DUFFY, JON JOHNSON, JOSEPH VAUGHN and FRANK
WRIGHT, as prayed for below, state as follows:

## INTRODUCTION

The right to the public carry of firearms is fundamental, as much so as the
possession of firearms inside one's home. In response to the Seventh Circuit's
decision in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), Illinois became the last
State in America to allow the public concealed carry of firearms for self-defense
purposes. However, the laws governing the licensing of concealed carry in Illinois
have resulted in a system that, for some, result in a permanent denial of that right.
This is due to a revolving door application process that forever penalizes past
transgressions, takes as gospel unproven allegations, and denies the applicant a fair
opportunity to investigate and refute the State's claims.

Plaintiff White has been battling this system since 2013. Though not a
perfect individual, White has met all requirements for both an Illinois FOID card
and a concealed carry license, except for being improperly labeled a "danger" by the
State, a label which, given the language and implementation of the Illinois
Firearms Concealed Carry Act, White will never be able to shake.

Plaintiff White is one such individual unlawfully aggrieved by the system,
but there are many.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201 and 2202, and 42 U.S.C. §1983, in that this action seeks to redress the deprivation, under color of the laws, statutes, ordinances, regulations, customs, and usages of the Defendants as they execute, administer and enforce the complained-of laws, of the rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

8.      Venue lies in this Court pursuant to 28 U.S.C. §1391, because the events and omissions giving rise to this action are harming Plaintiff in this District.

## PARTIES

### Plaintiffs

9.      Michael White ("White") is an individual 43 years of age who resides in the City of Chicago, County of Cook, in the State of Illinois.   White is married and has two children, now adults, who he has faithfully supported.  White obtained a General Equivalency Degree in 2001 and, since then, he has been gainfully and essentially continuously employed.

10.      White applied for, and has been denied, an Illinois concealed carry license after his application was routed to the Illinois Concealed Carry Licensing Review Board.

11.      White would possess and carry a loaded and functional concealed handgun in public for self-defense, but refrains from doing so because he fears

prosecution due to the prohibition on carrying a concealed firearm in public for self-defense without a CCL.

12. ISRA is a non-profit membership organization incorporated under the laws of Illinois with its principal place of business in Chatsworth, Illinois. ISRA has over 17,000 members and supporters in Illinois, and many members outside the State of Illinois. The purposes of ISRA include securing the Constitutional right to privately own and possess firearms within Illinois, through education, outreach, and litigation. ISRA brings this action on behalf of itself and its members.

13. ISRA has members who have applied for, and been denied, Illinois concealed carry licenses after their applications were routed to the Illinois Concealed Carry Licensing Review Board.

14. Members of ISRA who are Illinois residents, and who possess FOID cards, and who have applied for an Illinois concealed carry license but were rejected by the Illinois Concealed Carry Licensing Review Board, would possess and carry loaded and functional concealed handguns in public for self-defense, but refrain from doing so because they fear prosecution due to the prohibition on carrying a concealed firearm in public for self-defense without a CCL.

## Defendants

15. The Department of Illinois State Police ("ISP") is a department of the Executive Branch of the State of Illinois created by statute, 20 ILCS 2605/2605-1, *et seq.* Under the Illinois Firearm Concealed Carry Act, 430 ILCS 66/1, *et seq*, ("FCCA"), the ISP is charged with administering the system for considering and for

granting or denying individual applications for licenses to carry concealed handguns under the FCCA.

16.     Brendan F. Kelly is the Acting Director of the ISP and is sued in his official capacity pursuant to the principles set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

17.     The Firearm Services Bureau ("FSB") is a division of the ISP established to administer programs relating firearms delegated to the ISP, such as under the FCCA.  Having the power to make decision in these programs, the FSB is an administrative agency of the State of Illinois as defined by 735 ILCS 5/3-101.

18.     Jessica Trame is the Bureau Chief of the FSB.  She is the ISP employee directly responsible for the administration of the FCCA, and is the ISP employee directly responsible for the denial of White's CCL application and his rights.  She is sued in her official capacity pursuant to the principles set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

19.     The Illinois Concealed Carry Licensing Review Board (the "Review Board"), is an administrative agency created under the FCCA, 430 ILCS 66/20, which is charged with hearing and determining objections filed by law enforcement agencies to the applications of individuals for licenses to carry a concealed handgun pursuant to § 66/30 of the FCCA.  In relevant part, the CCLRB reviewed White's application for a CCL and unjustly denied same.

20.     Jeremy Margolis is the Chair of the Review Board, and Edward Bobrick, Stephen Dinwiddie, Joseph Duffy, Jon Johnson, Joseph Vaughn and Frank

Wright are members of the Review Board. All of the above-named Defendants participated in the decision to wrongfully deny White a CCL and violate his rights, and are sued in their official capacity only, pursuant to the principles set forth in *Ex Parte Young*, 209 U.S. 123 (1908).

## FACTS COMMON TO ALL COUNTS

*Concealed Carry in Illinois*:

21.    It is the law in Illinois that a citizen may bears arms for protection outside the home. In response to the decision of the United States Court of Appeals for the Seventh Circuit in *Moore v. Madigan*, 702 F.3d 933 (7th Cir. 2012), finding the Second Amendment to the United States Constitution secured the right to carry a concealed firearm for protection outside the home, the Illinois General Assembly enacted the FCCA.

22.    White wishes to obtain a CCL in order to be able to obtain a firearm for self-defense, pursuant to *District of Columbia v. Heller*, 128 U.S. 2783 (2008), which is applicable to the State of Illinois pursuant to *McDonald v. City of Chicago*, 130 S.Ct. 3020 (2010), and *Moore*.

23.    The FCCA established a statutory framework that sets forth the administrative, training, and individual eligibility requirements needed to obtain a license to carry a concealed firearm (hereinafter "License"). An applicant must pay a License application fee and hold a valid Firearm Owners Identification Card ("FOID") issued (also for a fee) by the ISP. 430 ILCS 66/5. An applicant for a license must then take a 16 hour course from certified instructor covering firearm

6

safety, the provisions of the FCCA and a practical proficiency test that involves live fire exercises. Instructors charge for these courses, with costs ranging from $175.00-$350.00.

24. The FCCA requires the ISP to conduct a background check on each applicant. 430 ILCS 66/35. The ISP must search, *inter alia*, the National Instant Criminal Background Check ("NICS"); all available state and local criminal history record information files, including records of juvenile adjudications; records relating to domestic violence orders; mental health records; and "all other available records of a federal, state or local agency or other public entity in any jurisdiction likely to contain information relevant to whether the applicant is prohibited from purchasing, possessing, or carrying a firearm under federal, state, or local law."

25. With information the ISP compiled from the background check, § 66/25(3) of the FCCA provides (emphasis added):

The [ISP] **shall issue** a license to an applicant completing an application in accordance with Section 30 if this person:

> (3) has not been convicted or found guilty in this State, or any other state, of:
>
> > (A) a misdemeanor involving the use or threat of physical force or violence to any person within the 5 years preceding the date of the license application[1]; or
> >
> > (B) 2 or more violations related to driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or any

---

[1] For completeness, it is noted that conviction of a felony would disqualify a person not only from a CCL but also an FOID, thus prohibiting even the possession of a firearm. 430 ILCS 65/8(c).

> combination thereof, within the 5 years preceding the date of the license application.

(4) is not the subject of a pending arrest warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm.

26. In apparent contradiction to the "shall issue" mandate of § 66/25(3) of the FCCA, § 66/15(b) of the FCCA directs the ISP to object to an application under the following conditions:

(b) If an applicant has 5 or more arrests for any reason that have been entered into the Criminal History Records Information (CHRI) System, within 7 years preceding the date of application for a license, or has 3 or more arrests within the 7 years preceding that date of application for a license for any combination of gang-related offenses.

27. Any law enforcement agency may also object to the application under § 66/15 of the FCCA "based upon a reasonable suspicion that the applicant is a danger to himself or herself or other, or a threat to public safety."

28. If either the ISP or a law enforcement agency objects to an application, the FCCA created the Concealed Carry Licensing Review Board ("Review Board") "to consider any objection to an applicant's eligibility to obtain a license under [the Act] submitted by a law enforcement agency or the Department under Section 15 of [the Act]."  FCCA, § 66/20.

29. The FCCA does not define or provide any guidance to the Review Board (or law enforcement agencies) concerning what conduct or applicant characteristics make the applicant "a danger to himself or herself or other, or a threat to public safety."

8

*White's first application*:

30. On or about May 1, 2014, White submitted an application for a license to carry a concealed firearm, pursuant to and in accordance with § 66/30 of the FCCA. At that time, White had paid his fees, possessed a valid FOID and successfully completed the required classes. In addition, White was not disqualified from obtaining a License under § 66/25(3) of the FCCA.

31. However, two law enforcement agencies, the Chicago Police Department ("CPD") and the Cook County Sheriff, objected to his application based on prior arrests, some dating back nearly 20 years. The Review Board, by final order dated August 20, 2015, denied the application, stating:

> After reviewing the evidence received, the CCLRB determined, by a preponderance of the evidence, that the above referenced Applicant is a danger to him/herself, is a danger to others, or poses a threat to public safety. Therefore, the objection is sustained and the Illinois State Police is directed to deny his/her application for a concealed carry license pursuant to 10(f) of the FCCA.

32. Disagreeing with this finding, he appealed this decision to the Circuit Court of Cook County, Illinois, which affirmed the Board's decision. He then appealed to the Appellate Court of Illinois, First District, which also affirmed Board's decision. The Illinois Supreme Court denied his Petition for Leave to Appeal on September 27, 2017.

*White's second application*:

33. On or about August 19, 2017, White reapplied for a License. During the three year time period between his initial application and this second application he was not arrested. Accordingly, he truthfully answered "No" to the

9

"Criminal History Questions" and made the affirmation required in § 66/30 of the FCCA.

34.     At the time of this reapplication, he was still in lawful possession of a Firearm Owners Identification Card ("FOID") issued by the ISP pursuant to 430 ILCS 65/5; he has had his FOID card for approximately 20 years.  He is not otherwise prohibited, under either state of Federal law, from possessing or receiving a firearm.

35.     At the time of his reapplication, he had not been convicted or found guilty in this state, or any other state, of:

    a.    a misdemeanor involving the use or threat of physical force or violence to any person within the 5 years; or

    b.    two or more violations related to driving while under the influence of alcohol, other drug or drugs, intoxicating compound or compounds, or any combination thereof, within the 5 preceding years.

36.     At the time of White's reapplication, he was not the subject of a pending arrest warrant, prosecution, or proceeding for an offense or action that could lead to disqualification to own or possess a firearm.

37.     At the time of White's reapplication, he had not been in residential or court-ordered treatment for alcoholism, alcohol detoxification, or drug treatment within the immediately preceding 5 years.

38.     At the time of White's reapplication, he had successfully completed firearms training and all educational components required under § 66/75 of the FCCA.

39. With White's reapplication, he paid the fee required under the FCCA and the Rules promulgated thereunder.

40. At the time of White's reapplication, he had not violated any of the statutory preconditions of § 66/25 of the FCCA that would have disqualified him from obtaining a concealed carry license.

41. At the time of White's reapplication, he had not been arrested 5 or more times for any reasons in the 7 years prior to his application. *In fact, White had not been arrested at any time during the five years prior to his reapplication.*

42. At the time of White's reapplication, he had not been arrested 3 or more times for any combination of "gang-related offenses" (as defined in § 66/10 of the FCCA) in the 7 years prior to his application.

43. At the time of White's reapplication, he satisfied all requirements set forth in § 66/25 of the FCCA, which therefore mandated that the ISP "shall issue" him a license.

44. By letter dated September 21, 2017, the ISP notified White that it had received "an objection to [his] eligibility from a law enforcement agency." Then on October 25, 2017, White received a communication through the ISP website "portal" the ISP uses to communicate with License applicants. This communication advised White that the Chicago Police Department ("CPD") had objected stating:

> CHICAGO POLICE DEPARTMENT: Officer Eric Gonzalez on behalf of Superintendent Eddie Johnson of the Chicago Police Department objects to the issuance of a concealed carry license to the applicant, Michael W. White, based on a reasonable suspicion that the applicant is a danger to himself or others or a threat to public safety. In support of the objection, be advised

11

> that the Justice Police Department reports reflect the following: 12-00001 reckless discharge of a firearm, in that on 01 JAN 2012, the applicant discharged multiple rounds from a gun into the air; the offender was arrested. The applicant is identified in the Chicago Police gang database as a member of the Latin Soul street gang. The criminal activities of street gangs pose a substantial threat to the safety and quality of life of the residents of Chicago. [] [sic] The Board is also requesting the following information from you: Information regarding the factual circumstances of your arrest(s) by the Chicago Police Department on or about the indicated date(s): 8/10/1998; 1/9/1996; 4/7/1995; 3/6/1994; 3/1/1994; 10/3/1993; 8/3/1993.

A copy of this communication is attached hereto as 1 and by this reference is incorporated herein.

45.    Notably missing from the CPD's objection was the fact that White demanded trial on the "reckless discharge of a firearm" and was found not guilty after trial. White brought this to the Review Board's attention along with providing the information requested for the arrests dating back to *1993*, in his affidavit attached as part of his "Applicant's Submission in Response to Objections (the "Submission").[2] A copy of the Submission is attached hereto as Exhibit 2 and by this reference is incorporated herein.

46.    In addition to addressing the "reckless discharge" and arrests, White flatly denied in his affidavit that he is or was ever a member of any gang. Moreover, in connection with White's first application, his counsel requested, through FOIA requests, all information from the CPD and Sheriff of Cook County that supported their accusations that White was a member of the Latin Souls gang.

---

[2]   White also advised the Review Board in his Submission that he was informed and believed that another individual had actually been convicted of that reckless discharge.

12

Neither the CPD nor the Sheriff provided any factual basis other than a database printout. White raised this fact, or indeed the lack of supporting facts, to the Board in his Submission. A copy of the CPD's and Sheriff's FOIA responses are attached as Exhibits 2 and 3 to his Submission.

47.     By letter dated November 17, 2017, the ISP notified White that his application was denied. The communication did not provide any explanation or basis for the decision other than the Review Board "determined that your are a danger to yourself, are a danger to others, or pose a threat to public safety." The Review Board gave no reasoning or factual substantiation for this determination. A copy of this communication is attached hereto as Exhibit 3 and by this reference is incorporated herein.

48.     White is a law-abiding FOID cardholder, and any determination that White is unfit to obtain a CCL is arbitrary and capricious, not based on any competent or sufficient evidence.

49.     White is not a danger to himself or the community, and granting the relief requested herein would not be contrary to the public interest.

## CONSTITUTIONAL PROVISIONS

50.     The Second Amendment provides:

> A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed.

U.S. Const. amend. II.

51.     The Second Amendment "is fully applicable against the States."

*McDonald v. City of Chicago*, 561 U.S. 3025, 130 S. Ct. 3020, 3026 (2010).

52.     The constitutional right to carry firearms in public for self-defense and defense of others is as fundamental as the right to possess firearms for those purposes inside one's residence.  *Moore v. Madigan*, 702 F.3d 933, 941 (7th Cir. 2012).

## COUNT I: THE FCCA VIOLATES WHITE'S RIGHT TO BEAR ARMS U.S. CONST. AMENDS. II AND XIV, 42 U.S.C. §1983

53.     Plaintiffs incorporate and reallege Paragraphs 1 through 52, inclusive, as if fully restated herein.

54.     White has twice been denied his constitutionally guaranteed right to bear arms for self defense.  The conclusory basis for this denial resides in the cryptic restatement of the FCCA's language, that White *is* " a danger to him/herself, is a danger to others, or poses a threat to public safety."

55.     The Board twice reached this conclusion with no evidence that White *is* "a danger to him/herself, is a danger to others, or poses a threat to public safety." Rather, the Board focused on **arrests**, not even convictions, ***that occurred over 20 years ago.***   White challenged the only "recent" event, a charge of unlawful discharge of a firearm, demanding trial on the allegation; he was found not guilty of the offense.  Further, White is informed and believes that another man was convicted of unlawfully discharging a gun at the New Year's Eve party at which White was arrested.

14

56. The FCCA allows the Board to reach this result because it provides no guidance as to either the meaning, or particular application, of the phrase "is a danger to him/herself, is a danger to others, or poses a threat to public safety." In fact, the FCCA vests the Board with unbridled discretion in deciding what this phrase means and to whom it may be applied.

57. The FCCA also allows the Board to make this finding by using the most lax of evidentiary standards; § 66/20 of the FCCA provides that the fundamental right to armed self defense may be taken from an individual "if the Board determines *by a preponderance* of the evidence that the applicant posses a danger to himself or herself, or others, or is a threat to public safety."

58. A finding that a person "poses a threat to himself, herself or others or is a threat to the public safety" works as a "blanket prohibition" to that person's right to carry a firearm to protect himself in public. The claim that the Board may consider any *arrest* regardless of when it occurred, works not only blanket prohibition but also a perpetual prohibition, indeed a *lifetime ban*, to that person's right to carry a firearm to protect himself in public.

59. White allowed several years to pass before he reapplied for his CCL. This period of time made no difference to the Board; and, given the utter lack of guidance and objective criteria governing how the Board is to consider when an applicant *is* "a danger to him/herself, is a danger to others, or poses a threat to public safety" White cannot know what he must do, or how long he must wait, to avail himself of his constitutionally secured right to bear arms for self defense.

15

60. It is also clear that White's inability to prove a negative – that he is *not* a gang member – affected his ability to exercise his right to bear arms for self defense. Despite requesting evidence from the CPD and Cook County Sheriff that substantiated, or even provided the basis of suspicion, that he was a gang member, the objecting law enforcement agencies gave him nothing more than a computer printout with his name on it.

61. In the following ways, both facially and as-applied, the construction, operation and implementation of the FCCA unjustifiably burdens White's right to bear arms secured by the Second Amendment to the United States Constitution:

    a. the FCCA fails to set objective standards under which an administrative agency may evaluate an applicant for a license to bears arms for self defense;

    b. the FCCA vests unbridled discretion in determining who may exercise the right to bear arms for self defense;

    c. the FCCA allows the administrative agency to use the preponderance of the evidence standard in evaluating whether a person may be deprived of the right to bear arms for self defense.

    d. the FCCA works a lifetime ban on a person's right to bear arms for self defense.

16

62.     By so burdening White's ability to obtain a license under the FCCA, the Defendants have not only unjustifiably denied him his right but have effectively imposed a lifetime ban on White's right to bear arms for self defense.

63.     The Defendants, under the color of law, both facially and as-applied, deprive White of his right to bear arms, in violation of the Second and Fourteenth Amendments to the United States Constitution.  White is thus damaged in violation of 42 U.S.C. §1983.  White is therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued deprivation of his right.

## COUNT II: THE FCCA VIOLATES WHITE'S RIGHT TO DUE PROCESS U.S. CONST. AMEND. XIV, 42 U.S.C.  §1983

64.     White repeats, realleges, and incorporates Paragraphs 1 through 63, inclusive, as if fully restated herein.

65.     White has twice been denied his constitutionally guaranteed right to bear arms for self-defense.  The conclusory basis for this denial resides in the cryptic restatement of the FCCA's language, that White *is*  "a danger to him/herself, is a danger to others, or poses a threat to public safety."

66.     The Board twice reached this conclusion with no evidence that White *is* "a danger to him/herself, is a danger to others, or poses a threat to public safety." Rather, the Board focused on *arrests*, not even convictions, *that occurred over 20 years ago.*  White challenged the only "recent" event, a charge of unlawful discharge of a firearm, demanding trial on the allegation; he was found not guilty of the offense.  Further, White is informed and believes that another man was

convicted of unlawfully discharging a gun at the New Year's Eve party at which White was arrested.

67. The FCCA allows the Board to reach this result because it provides no guidance as to either the meaning, or particular application, of the phrase "is a danger to him/herself, is a danger to others, or poses a threat to public safety." In fact, the FCCA vests the Board with unbridled discretion in deciding what this phrase means and to whom it may be applied.

68. The FCCA also allows the Board to make this finding by using the most lax of evidentiary standards; § 66/20 of the FCCA provides that the fundamental right to armed self defense may be taken from an individual "if the Board determines *by a preponderance* of the evidence that the applicant posses a danger to himself or herself, or others, or is a threat to public safety."

69. A finding that a person "poses a threat to himself, herself or others or is a threat to the public safety" works as a "blanket prohibition" to that person's right to carry a firearm to protect himself in public. The claim that the Board may consider any *arrest* regardless of when it occurred, works not only blanket prohibition but also a perpetual prohibition, indeed a *lifetime ban*, to that person's right to carry a firearm to protect himself in public.

70. White allowed several years to pass before he reapplied for his CCL. This period of time made no difference to the Board; and, given the utter lack of guidance and objective criteria governing how the Board is to consider when an applicant *is* "a danger to him/herself, is a danger to others, or poses a threat to

public safety" White cannot know what he must do, or how long he must wait, to avail himself of his constitutionally secured right to bear arms for self defense.

71.     It is also clear that White's inability to prove a negative – that he is *not* a gang member – affected his ability to exercise his right to bear arms for self defense.  Despite requesting evidence from the CPD and Cook County Sheriff that substantiated, or even provided the basis of suspicion, that he was a gang member, the objecting law enforcement agencies gave him nothing more than a computer printout with his name on it.

72.     By so burdening White's ability to obtain a license under the FCCA, the Defendants have not only unjustifiably denied him his right but have effectively imposed a lifetime ban on White's right to bear arms for self defense.

73.     White's private interest that will be affected and deprived by the Defendants' actions is his fundamental right to armed self-defense in public.  He is not a person who was historically prohibited from possessing firearms, and has not done anything since to remove himself from those categories of persons able to exercise this fundamental right.

74.     The risk of the Defendants' erroneous deprivation of White's interest through the CCLRB procedures is great, as White has been deprived of his fundamental rights with no opportunity to correct or undo the deprivation, and the consequences include White's sustaining a severe or fatal injury should he suffer a violent attack and be unable to properly defend himself.

75.     The value of additional or substitute procedural safe-guards, such as offering White a hearing, and disallowing the Defendants' reliance on long-ago incidents and long-ago unsubstantiated allegations of wrongdoing that are not probative to the issue of whether White *is* a danger to himself or anyone else, is high.

76.     The Defendants and the State do not have an interest in depriving persons of fundamental rights, and of wrongfully preventing qualified persons from being able to defend themselves.

77.     The Defendants, under the color of law, both facially and as-applied, deprive White of his right to bear arms, in violation of his procedural due process rights under the Fourteenth Amendment to the United States Constitution.  White is thus damaged in violation of 42 U.S.C. §1983.  White is therefore entitled to declaratory and preliminary and permanent injunctive relief against the continued deprivation of his right.


WHEREFORE, White prays this Honorable Court:

a.      find that the FCCA unjustifiably denies White his Second Amendment right to bear arms for self defense;

b.      find that the FCCA unjustifiably denies White his Fourteenth Amendment procedural due process rights;

c.      enter an order granting White injunctive relief that enjoins the Defendants from further deprivation of White's right to bear arms and right to procedural due process;

c.      enter a mandatory injunction requiring the Defendants to issue White a license to carry a concealed firearm under the FCCA;

d.      award White his attorney's fees and costs, pursuant to 42 U.S.C. §1983; and,

e.      award White such other and further relief as it deems just.

Dated: April 25, 2019                    Respectfully submitted,


                                         By:_/s/Gregory A. Bedell_____
                                              One of the Attorneys for Plaintiff



Gregory A. Bedell (Atty. ID# 6189762)
Knabe, Kroning & Bedell
20 South Clark Street
Suite 2301
Chicago, Illinois 60603
312.977.9119
gbedell@kkbchicago.com

David G. Sigale (Atty. ID# 6238103)
LAW FIRM OF DAVID G. SIGALE, P.C.
799 Roosevelt Road, Suite 207
Glen Ellyn, IL 60137
630.452.4547
dsigale@sigalelaw.com